IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

| | |
|---|---|
| KALMBACH FEEDS, INC.<br>7148 State Highway 199<br>Upper Sandusky, Ohio 43351, | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| -vs- | : <br> : <br> : |
| PURINA ANIMAL NUTRITION, LLC<br>c/o CT Corporation System, Statutory Agent<br>1300 East 9th Street<br>Cleveland, Ohio 44114, | : <br> : <br> : <br> : <br> : |
| and | : <br> : |
| LAND O'LAKES, INC.<br>c/o CT Corporation System, Statutory Agent<br>1300 East 9th Street<br>Cleveland, Ohio 44114, | : <br> : <br> : <br> : <br> : |
| Defendants. | : |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND ANCILLARY RELIEF

1.      This is an action for declaratory judgment and ancillary relief pursuant to the Ohio Declaratory Judgment Act, Revised Code Chapter 2721. As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, liabilities, status and legal relations of the parties.

2.      This Court has jurisdiction to declare the rights, status and legal relations of the parties under R.C. 2721.02.  This Court also has jurisdiction to construe the statutes and regulations at issue in this action under R.C. 2721.03.

3.      Declaratory relief from this Court, as requested herein, is necessary to preserve rights that otherwise may be lost or impaired and will terminate controversy between the parties and remove uncertainties within the meaning of R.C. 2721.06.

4.     Plaintiff Kalmbach Feeds, Inc. ("Kalmbach") is an Ohio corporation with its headquarters in Upper Sandusky, Ohio and doing business continuously and systematically throughout Ohio, including within Franklin County.

5.     Kalmbach is a family-owned company that manufactures and sells a full line of top quality nutritional feed products for livestock, poultry, and other animals.

6.     Included within Kalmbach's line of animal feed products is a brand of equine feed called Tribute® Equine Nutrition ("Tribute®"), which is manufactured by Kalmbach under strict quality control standards.

7.     Defendant Purina Animal Nutrition, LLC ("Purina") is a Delaware limited liability company that at all times since November 13, 2000 has been registered to transact business in the State of Ohio and has, in fact, regularly, continuously and systematically conducted business within Ohio, including within Franklin County, from 2000 to the present.

8.     In addition to its present name of Purina Animal Nutrition, LLC, Purina has conducted business within Ohio, including within Franklin County, Ohio, using the names Land O'Lakes Farmland Feed, LLC, Land O'Lakes Animal Milk Products Company, Innovative Proteins, and Land O'Lakes Purina Feed, LLC.

9.     Defendant Land O'Lakes, Inc. ("Land O'Lakes") is a Minnesota cooperative corporation and is the corporate parent of Purina.  Land O'Lakes is registered to transact business in the State of Ohio and has, in fact, regularly, continuously and systematically conducted business within Ohio, including within Franklin County, Ohio.

10.    Defendants Purina and Land O'Lakes have consented to service of process upon them in this State by appointing an Ohio corporation in Cleveland, Ohio as their statutory agent.

11.     Pursuant to Ohio's long-arm statute, R.C. 2307.382(A), the claims set forth in this Complaint arise from Defendants' transacting business in Ohio in direct competition with Kalmbach and from Defendants' causing injuries to Kalmbach through their purposeful acts in this State.

12.     Defendants have intentionally directed their activities at Kalmbach, an Ohio corporation headquartered in Ohio.  By doing so, Defendants have purposefully availed themselves of the privilege of acting in the State of Ohio and have caused or intended to cause harmful consequences in this State.

13.     Defendants have substantial contacts within Ohio.  As part of Defendants' regular, continuous and systematic transaction of business in Ohio, they derive substantial revenues from products sold and consumed in Ohio.  Defendants operate animal feed facilities, including distribution facilities, in Orville, Massillon, Chillicothe, and Lima, Ohio. Defendants distribute their animal feed products from these facilities into the stream of commerce throughout the State of Ohio, including within Franklin County, Ohio.

14.     Within the State of Ohio, including within Franklin County, Ohio, and elsewhere, Defendants distribute, market, and sell their own brands of horse feed products, using the names Purina Strategy, Purina Race Ready, and Purina Equine Senior, Purina Ultium, Purina Omolene, Purina Impact, Purina County Acres, Purina Horseman's Edge, Purina WellSolve, Purina Enrich, Purina Super Sport, Purina Amplify, and Purina Equine Junior.  Defendants' horse feed products directly compete with Kalmbach's Tribute® products within Ohio, including within Franklin County.

15.     Venue in this forum is proper pursuant Civ.R. 3(B) inasmuch as a part of the claim for relief, and events giving rise to the claim at issue, arises in Franklin County, Ohio.  In

addition, Kalmbach regularly and systemically conducts business activities in Franklin County, Ohio. Kalmbach has employees in this county, distributes and sells equine feed and other products in this county, and has authorized dealers whose principal place of business is Franklin County.

16. Kalmbach is informed and believes that Defendants have embarked upon a strategy of unfair business practices targeted against Kalmbach, including against Kalmbach in the State of Ohio and within Franklin County, presumably designed to take market share from Plaintiff for Defendants' benefit in the equine feed market.

17. On June 9, 2016, Defendants mailed a threatening letter to Kalmbach in Ohio (the "Demand Letter"), a true and accurate copy of which is attached as Exhibit A. In the Demand Letter, Defendants contend that Kalmbach's Tribute® Equine Nutrition brand violates law in several respects, and Defendants insist that Kalmbach capitulate to their demands by June 24, 2016, or else Defendants will pursue their alleged "rights and remedies" (presumably, litigation against Kalmbach).

18. In the Demand Letter, Defendants assert that Kalmbach's Tribute® equine products are "adulterated" and "misbranded" "new animal drugs." Defendants further contend that their "unlawful presence in the market" "harms Purina by using drug claims to divert sales to [Kalmbach'] unlawful horse feed products." Defendants demand Kalmbach to "immediately remove" its "unlawful representations from its products' labeling, marketing and advertising," to "cease and desist from continuing to market its products," and "to withdraw and destroy its offending products from the market" by "no later than June 24, 2016."

19. Defendants next assert that certain of Kalmbach's labeling and advertising materials are "false, deceptive and/or misleading" and "unsubstantiated" in violation of Section

4

43 of the federal Lanham Act, 15 U.S.C. § 1125. Defendants demand that, unless Kalmbach provides "substantiation" to Defendants' attorney "for legal review and consideration," Kalmbach must "permanently cease[ ] and … forever desist from making" such claims.

20. Kalmbach denies Defendants' allegations about its Tribute® equine feed products and the labeling, marketing and advertising for those products. Kalmbach maintains that its Tribute® equine feed products comply with applicable law and that the labeling, marketing, and advertising for its Tribute® equine feed products that are in dispute are appropriately substantiated where necessary and are not false, deceptive, or misleading.

21. Kalmbach further denies that Defendants have suffered or likely will suffer any damage or other harm as alleged in their Demand Letter.

22. This Court has concurrent jurisdiction to resolve claims under the Lanham Act. *Keith A. Keisser Ins. Agency, Inc. v. Nationwide Mutual Ins. Co.*, 246 F.Supp.2d 833, 836 (N.D. Ohio 2003).

## COUNT ONE
### (Declaratory Judgment)

23. Kalmbach incorporates by reference the allegations of paragraphs 1 through 22 above.

24. As alleged herein, a real, substantial, immediate, and justiciable controversy exists regarding the rights, duties, liabilities, and legal relations of the parties.

25. Declaratory relief, as requested from this Court below, is necessary to resolve the controversy and remove uncertainties between the parties.

WHEREFORE, Plaintiff Kalmbach, Inc. requests relief from the Court and judgment against Defendants Purina Animal Nutrition, LLC and Land O'Lakes, Inc. as follows:

5

(A)     A declaration that Kalmbach is not in violation of the Lanham Act, 15 U.S.C. 1051, *et seq.*, as asserted by Defendants in their Demand Letter, and that the labeling, marketing, and advertising for Kalmbach's Tribute® Equine Nutrition products that are in dispute are appropriately substantiated where necessary and are not false, deceptive, or misleading.

(B)     A declaration that Defendants have not been damaged or otherwise harmed as a proximate result of Kalmbach's alleged violations of the Lanham Act, 15 U.S.C. 1051, *et seq.*, as asserted in Defendants' Demand Letter.

(C)     A declaration of the rights, liabilities, and legal relations of the parties under the Ohio Deceptive Trade Practices Act, R.C. 4165.01 to 4165.04, with respect to equine feed products, including a declaration that Kalmbach has not engaged in a deceptive trade practice under R.C. 4165.02 in connection with its labeling, marketing, and advertising for Tribute® Equine Nutrition products that are the subject of the parties' controversy.

(D)     An award of Kalmbach's costs and fees herein.

(E)     Such further and ancillary relief as the Court deems appropriate and is supported by the evidence.

/s/ Steven W. Tigges
Steven W. Tigges (0019288)
John W. Zeiger (0010707)
Stuart G. Parsell (0063510)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
Telephone:  (614) 365-9900
Facsimile:  (614) 365-7900
tigges@litohio.com
zeiger@litohio.com
parsell@litohio.com

Attorneys for Plaintiff Kalmbach Feeds, Inc.

550-008:606640

6

# Exhibit A



FaegreBD.com

USA ▾ UK ▾ CHINA

James R. Steffen
*Partner*
james.steffen@FaegreBD.com
Direct +1 612 766 8508

Faegre Baker Daniels LLP
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Main +1 612 766 7000
Fax +1 612 766 1600

June 9, 2016

## VIA OVERNIGHT MAIL

Paul Kalmbach
President
Kalmbach Feeds, Inc.
7148 State Highway 199
Upper Sandusky, OH  43351

Re:    Unlawful Promotion of Tribute Equine Nutrition Product

Dear Mr. Kalmbach:

We represent Land O'Lakes, Inc. and its subsidiary Purina Animal Nutrition, LLC ("Purina") in connection with intellectual property, advertising law and other matters.  It has come to Purina's attention that your company is engaged in promotion of product under the Tribute Equine Nutrition brand that violates federal law.

First, your promotion of Tribute product includes unlawful drug claims. As you likely know, the Federal Food, Drug, and Cosmetic Act ("FDCA") (21 U.S.C. chap. 9) defines the term "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals."  FDCA §201(g)(1)(B).  For purposes of determining whether a product is a "drug" for purposes of the FDCA, a product's intended use may be inferred from labeling, advertising, historical use or by verbal or written representations.  Drug products not generally recognized by qualified experts as safe and effective for the conditions recommended or suggested by their labeling are "new animal drugs."  FDCA §201(v)(1).  New animal drugs are, as a matter of law, unsafe and adulterated unless subject to new animal drug applications approved by the U.S. Food and Drug Administration ("FDA").  FDCA §501(a)(5), §512.  Further, these drugs may be misbranded for lack of adequate directions for use, because their labels are false and misleading and/or because their labels fail to include information the Act requires.  E.g., FDCA §502.  Any of these violations render the affected products subject to seizure and condemnation.

At least the following non-exclusive examples from your company's enclosed labeling and/or advertising materials demonstrate your company's intent that consumers understand its horse feed products are used in the cure, mitigation, treatment or prevention of disease in horses:

1

Exhibit

A

Paul Kalmbach                                    -2-                                    June 9, 2016

1) "Low NSC (non-structural carbohydrate = sugar + starch) and low feeding rate *reduces negative effects on horses who are hyperactive or have metabolic conditions such as insulin resistance, laminitis, ulcers, obesity or tying-up issues.*"

2) "Contains Glucosamine, Chondroitin Sulfate, and MSM.  MSM supports joint health, range of motion, *improves respiratory symptoms caused by seasonal allergies and promotes hoof health.*"

3) "Optimum levels of antioxidants Vitamin E, Vitamin C and Selenium *reduce damage from aging and exercise.  Also boosts your horse's immunity.*"

4) " [now with . . .] a naturally-occurring organic sulfur source *shown to down-regulate inflammatory markers.*"

5) "*Increases total diet digestibility and improves overall gut health.*"

6) "Less than half the sugar and starch of oats *for improved behavior.*"

7) "Higher fat, highly digestible fiber and lower sugar and starch *for calm performances without loss of energy or condition.*"

8) "6% fat for *improved performance and body condition* with less feed."

9) "Added B-Complex vitamins may *improve appetite and blood cell counts.*"

10) "*stabilizes hindgut pH* by promoting the growth & activity of beneficial bacteria, *even during stress and the feeding of high sugar/starch diets.*"

11) "*reduces the incidence of abnormal behavior such as wood chewing or wind sucking.*"

12) "*improves weight gain in young growing horses.*"

These statements – and others similar – exhort consumers to use Tribute products in order to, among other things:  (a) reduce negative effects of insulin resistance, laminitis, ulcers and obesity; (b) improve respiratory symptoms caused by seasonal allergies; (c) boost immunity; (d) reduce damage from aging and exercise; (e) improve overall gut health; and (f) stabilize hindgut pH.

Our client is not aware that your company holds approved (or conditional) new animal drug applications for any of the involved products.  As marketed, therefore, the products are adulterated and misbranded new animal drugs because they are intended for use in curing, mitigating, treating or preventing disease in horses.  Their unlawful presence in the market confuses and misleads consumers, risks depriving animals of FDA-approved therapies proven to be safe and effective and harms Purina by using drug claims to divert sales to your company's unlawful horse feed products.

Purina therefore respectfully demands that your client immediately remove these and similar unlawful representations from its products' labeling, marketing and advertising, that your company

US.106575855.04

Paul Kalmbach                                    -3-                              June 9, 2016

cease and desist from continuing to market its products in violation of the FDCA, and that your company withdraw and destroy its offending products from the market. Please confirm to the undersigned **no later than June 24, 2016,** that your company had complied with Purina's demands and has otherwise acted to bring its marketing and labeling into compliance with federal law with respect to drug claims. Please also detail in your response the steps your company has taken to remedy its unlawful conduct.

In addition to drug claims unlawfully used in promoting your products, your promotional materials include claims that are false, deceptive and/or misleading within the meaning of Section 43 of the federal Lanham Act (15 U.S.C. § 1125) and/or Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45). As you likely know, it is unlawful to use false or misleading statements to promote your products, and your company is required to have had appropriate substantiation for each of its claims prior to first the claims first being disseminated. *See, e.g., In re Pfizer, Inc.*, 81 F.T.C. 23 (1972); Federal Trade Commission Policy Statement, 49 Reg. at 31000 ("The reasonable basis doctrine requires that firms have substantiation before disseminating a claim.")

At least the following non-exclusive examples from your company's enclosed labeling and/or advertising materials illustrate claims that are false or misleading or that appear to be unsubstantiated:

1) "Essential K's dense nutrient concentration and low calorie pellet makes *it the lowest cost method* of supplying the most critical nutrients."

Our client believes this claim -- that your Essential K supplement product is the lowest cost product in the marketplace for supply of critical nutrients, is false. If you contend that your company does have appropriate substantiation for a claim that Essential K is the lowest cost product in the marketplace for supply of critical nutrients, please provide it to the undersigned for legal review and consideration. If not, please confirm to the undersigned **no later than June 24, 2106,** that you have permanently ceased and will forever desist from making the unsubstantiated comparative claim.

2) "Provides essential fatty acids, Omega 3 and 6, *required for healthy skin, healthy haircoat, top performances and quick recovery.*"

Our client does not believe that there is or can be appropriate substantiation for a claim that Omega 3 and 6 are "required for" healthy skin, healthy haircoat, top performances and/or quick recovery. If you contend that your company does have appropriate substantiation for this multi-part claim, please provide it to the undersigned for legal review and consideration. If not, please confirm to the undersigned **no later than June 24, 2106,** that you have permanently ceased and will forever desist from making the unsubstantiated comparative claim.

3) "With Equi-Ferm XL, a microencapsulated active dry yeast; *acts as both a pre- and probiotic.*"

Our client is not aware of any substantiation of active dry yeast acting as both a pre- and probiotic in horses. Given differences between species, testing in swine or other animals is not appropriate substantiation for this claim in product intended for horses. If you contend that your company does have appropriate substantiation for a claim that Equi-Ferm XL acts as both a pre- and probiotic in horses,

US.106575855.04

Paul Kalmbach                                   -4-                                   June 9, 2016

please provide it to the undersigned for legal review and consideration. If not, please confirm to the undersigned **no later than June 24, 2106,** that you have permanently ceased and will forever desist from making the unsubstantiated comparative claim.

    4) "This feed contains a dry source of cellulase that breaks down cellulose, a dry source of protease that hydrolyzes proteins and increases the digestibility of protein in soybean meal based diets, a dry source of lipase that hydrolyzes triglycerides, a dry source of hemicellulose that breaks down hemicellulose, and a dry source of phytase which hydrolyzes phytate and increases the digestibility of phytin-bound phosphorus."

Our client is not aware of any substantiation showing the described beneficial effect in horses. Given differences between species, testing in swine or other animals is not appropriate substantiation for this claim in product intended for horses. If you contend that your company does have appropriate substantiation for these claims in horses, please provide it to the undersigned for legal review and consideration. If not, please confirm to the undersigned **no later than June 24, 2106,** that you have permanently ceased and will forever desist from making the unsubstantiated comparative claim.

    Finally, we note that one of your dealers, T G Adams & Sons, Inc., is passing along an advertising claim that Tribute Equine Nutrition has the: "Only ionophore free facility in the US so no chance for cross contamination from ruminant animal feeds." As we believe you know, that claim is false. Tribute Equine Nutrition is not the only feed manufacturer that has ionophore free facilities. Indeed, Purina has several ionophore-free facilities in the United States. Please confirm to the undersigned **no later than June 24, 2016,** that you and your dealers have permanently ceased and will forever desist from making that false claim.

    All of Purina's rights and remedies are, of course, expressly reserved.

Very truly yours,

James R. Steffen

Enclosures

cc:    Purina Animal Nutrition, LLC
        David R. Merritt

US.106575855.04